**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220097-U

Order filed March 10, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| JAIME LARA and JOSEPH LEZON, as trustee for the Joseph L. Lezon Declaration of Trust, on behalf of themselves and condominium unit owners of the Naper Place Condominium Association, | ) ) ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0097 Circuit No. 21-CH-386 |
| NAPER PLACE CONDOMINIUM ASSOCIATION, a/k/a Lisle Place Condominium Association; and DAIVA MAJAUSKAS, LAIMUTE BAUKAUSKAITE, INGA SAPALAITE, IRENE BINKIENE, and PETER CONFORTI, as directors of Naper Place Condominium Association, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Bonnie M. Wheaton, Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Presiding Justice Holdridge and Justice Brennan concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  Trial court did not err in dismissing plaintiffs' derivative complaint where unit owners failed to allege a valid derivative action on behalf of the condominium association.

¶ 2        Plaintiffs, Jamie Lara and Joseph Lezon, filed a derivative complaint against defendants, Naper Place Condominium Association (Association) and members of the board of directors (Board), seeking declaratory and injunctive relief based on allegations that defendants improperly and illegally installed balcony railings in several condominium units. The circuit court granted defendants' motion to dismiss, finding plaintiffs failed to allege a valid derivative action. Plaintiffs appeal, arguing the court erred in granting defendants' motion and dismissing their complaint. Plaintiffs also claim that the court erred in rejecting their motion to disqualify defendants' attorneys and denying their petition for substitution of judge for cause. We find the first issue dispositive and affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Plaintiffs Lara and Lezon own and reside in condominium units that are part of the Naper Place Condominium Association.[1] In October 2015, the Village of Lisle filed an ordinance violation complaint against the Association asserting life safety violations against 179 balcony railings in the condominium complex. The lawsuit claimed that the Association failed to maintain the metal balcony railings in good condition in that the railings were rusted and structurally unsound. Both parties agree that the balcony railings are limited common elements and unit owners are responsible for the cost of replacement.

¶ 5        In February 2017, after several discussions at open board meetings, the Board voted to assist unit owners with replacing the railings by working with a contractor to obtain a group rate for the replacement project. During negotiations, the contractor refused to guarantee a set price without receiving payment first. As a result, the Board decided to manage each balcony as a

_____

[1] Lezon's unit is owned by the Joseph L. Lezon Declaration of Trust.

separate transaction and replace each railing after receiving payment from the individual unit owner. When the unit owner paid the invoice, the payment would be remitted to the contractor, who would then replace the railing in that unit. On March 26, 2021, Lezon received an invoice for $2,800 for a new balcony railing. He maintained that his railing was structurally sound and refused to pay the replacement cost.

¶ 6        Several months later, Lezon filed a "Derivative Complaint for Declaratory Judgment, Injunctive Relief, and Attorney's Fees and Costs" against the Association and the Board. The complaint alleged that the Board caused the Association to purchase new balcony railings that did not comply with the Du Page County Building Code and that "on information and belief" the railings were installed without a county building permit.[2] The complaint further alleged that, in approving the purchase and installation of the railings, the Board violated its fiduciary duty imposed under section 19 of the Condominium Property Act (765 ILCS 605/19 (West 2020)). Lezon requested a declaratory judgment that the individual directors willfully caused the illegal railing to be installed and violated their fiduciary duty to the Association. He also moved for a temporary restraining order and a preliminary injunction, enjoining the Board and the Association from installing additional railings or attempting to collect payment from unit owners for the installation costs.

¶ 7        Defendants filed a response opposing the temporary restraining order and preliminary injunction. The response averred that as of October 21, 2021, no payment had been received from Lezon, and no work had been performed on his unit. The trial court denied Lezon's request for a temporary restraining order and preliminary injunction, finding that he did not sustain any injury

---

[2] In 2021, the Naper Place Condominium complex was deannexed from the Village of Lisle. The record contains a response to a FOIA request made by plaintiffs' counsel dated September 28, 2021, in which the Du Page County Zoning Department states, "We do not have any permitting records for these properties for the time period you requested. You should contact the Village of Lisle for permits issued previously."

because he did not own or have an interest in a unit in which a replacement railing had been installed.

¶ 8        On October 26, 2021, Lezon filed an amended pleading adding Jaime Lara as a plaintiff. The amended single count complaint alleged that: (1) Lara owned a condominium unit in which the railing had been replaced; (2) defendants had the original railing illegally removed from Lara's unit; and (3) the original railing was replaced at the defendants' direction without a permit. Plaintiffs asserted that after the replacement railing was installed in Lara's unit, the Du Page County Building and Zoning Department (Zoning Department) cited the railing as a building code violation. They alleged that the "illegal" railing replacement created the potential for physical injury and the possibility of fines for building code violations and asserted that defendants should be held liable for monetary damages. Attached to the complaint was a stop work notice issued by the Zoning Department, also dated October 26, 2021. The notice listed the code violation as "permit required," but did not impose any fines or fees.

¶ 9        Plaintiffs maintained that defendants breached their fiduciary duty to manage the Association in plaintiffs' best interests and that a demand asking them to sue themselves would be futile. They requested, among other things: (1) a judgment declaring that the Board violated its fiduciary duty under section 18.4 of the Condominium Property Act (765 ILCS 605/18.4 (West 2020)); (2) an injunction prohibiting the Association from illegally installing additional balcony railings; and (3) an order directing the Board, jointly and severally, to pay the legal fees incurred by the Association in defending the action.

¶ 10       Defendants moved to dismiss plaintiffs' derivative suit pursuant to a combined motion under section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). They argued that the court should dismiss the complaint under section 2-615 of the Code (*id.* § 2-

615) because it did not allege a valid derivative action and the facts did not support an underlying breach of fiduciary duty claim. They also claimed dismissal was warranted under section 2-619 (*id.* § 2-619) because: (1) plaintiffs lacked standing to pursue a derivative action; (2) the issues were moot as the Board had ceased coordinating efforts to replace the railings; and (3) no cognizable injury resulted from the alleged breach of fiduciary duty because no fines had been imposed. In response, plaintiffs claimed they had standing to file a derivative action on behalf of the Association under the Condominium Property Act and the General Not For Profit Corporation Act of 1986 (Not For Profit Act) (805 ILCS 105/101.01 *et seq.* (West 2020)), claiming that both statutes empowered them to sue the Board on behalf of the Association for "any matter affecting two or more unit owners."

¶ 11 Following a hearing on the motion to dismiss, plaintiffs' counsel requested that defendants' motion be denied. In the alternative, counsel asked the court "to make the dismissal with prejudice to expedite prosecution of the case on appeal." The trial court concluded that plaintiffs' complaint failed to allege a valid derivative action, stating as follows:

> "This is not a derivative action. It is not an action that is being taken by members of a corporation against a third party for an injury to the association. As such, I believe it should have been brought by the individuals; or if the individuals who have been harmed are too numerous, there should have been a class action sought.
>
> * * *
>
> I was going to dismiss—or strike the amended complaint with leave to refile, but since Mr. Krause [(plaintiffs' attorney)] has requested that it be a dismissal with prejudice, I will certainly grant that request."

The court then dismissed the complaint with prejudice.

¶ 12                                    II. ANALYSIS

¶ 13           Plaintiffs first argue that the trial court erred in granting defendants' section 2-619.1 motion and dismissing their complaint on the basis that it failed to allege a valid derivative action.

¶ 14                              A. Standard of Review

¶ 15           Section 2-619.1 of the Code permits a party to combine a section 2-615 motion to dismiss based on a plaintiff's substantially insufficient pleadings with a section 2-619 motion to dismiss alleging certain defects or defenses. See 735 ILCS 5/2-619.1 (West 2020). To survive a section 2–615 motion a "plaintiff must allege facts sufficient to bring a claim within a legally recognized cause of action." *Tedrick v. Community Resource Center, Inc.*, 235 Ill. 2d 155, 161 (2009). A section 2-619 motion to dismiss admits the legal sufficiency of the plaintiff's complaint but asserts an affirmative matter outside of the pleading that defeats the claim. *Czarobski v. Lata*, 227 Ill. 2d 364, 369 (2008).

¶ 16           When ruling on a motion to dismiss filed under either section 2-615 or 2-619 of the Code, we must accept all well-pleaded facts as true and make all reasonable inferences therefrom. *Village of South Elgin v. Waste Management of Illinois, Inc.*, 348 Ill. App. 3d 929, 930 (2004). The record must be construed in the light most favorable to the plaintiff, but legal and factual conclusions unsupported by allegations of specific facts are not deemed admitted. *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). We review dismissal of a complaint under section 2-615 or section 2-619 *de novo*. *Grant v. State*, 2018 IL App (4th) 170920, ¶¶ 12-13.

¶ 17           Accepting all well-pleaded facts in plaintiffs' complaint as true and making all reasonable inference from those facts, we conclude that plaintiffs' allegations failed to support a valid derivative action.

¶ 18                          B. Derivative Action vs. Direct Claim

6

¶ 19    A derivative lawsuit is "an action that a shareholder brings on behalf of a corporation to seek relief for injuries done to that corporation, where the corporation either cannot or will not assert its own rights." *Davis v. Dyson*, 387 Ill. App. 3d 676, 682 (2008). Under corporate law, a shareholder seeking relief from an injury to the corporation may bring a suit derivatively on behalf of the corporation. *Sterling Radio Stations, Inc. v. Weinstine*, 328 Ill. App. 3d 58, 62 (2002). A derivative lawsuit technically consists of two causes of action: one claim against the board of directors for failing to assert a corporate right, and another based on the wrong that the third-party allegedly committed against the corporation. *Brown v. Tenney*, 125 Ill. 2d 348, 355 (1988). A corporation is a necessary defendant to a derivative suit, but the corporation "is only nominally a defendant, since any judgment obtained against the real defendant runs in its favor." *Meyer v. Fleming*, 327 U.S. 161, 167 (1946). In plain terms, a derivative lawsuit is a common mechanism shareholders employ against third parties to seek relief for wrongs done to the collective corporation when the board, *i.e.*, the corporate body, refuses to sue. See *Davis*, 387 Ill. App. 3d at 682.

¶ 20    In the context of condominium associations, a derivative action may be brought by unit owners against third parties on behalf of the association for harm done to it when the association refuses to assert its own right. *Id.* at 683. For example, individual unit owners may bring an action for conversion and fraud against a third party to protect their interest in the Association's funds if the Association fails to take action against that third party. See *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 100 (2004) (holding that unit owners did not have standing to bring a direct claim but were not barred from bringing a derivative suit to protect Association funds). Unit owners also have standing to bring a derivative claim against former board members to recover embezzled funds. *Davis*, 387 Ill. App. 3d at 687-88. In a derivative claim filed on behalf of the condominium

association, it is the association that must be injured, not individual unit owners. See *Brown*, 125 Ill. 2d at 355 (derivative action consists of a cause of action based on violation of a corporate right).

¶ 21 A direct or individual claim, however, is based on a direct and personal injury to the individual filing the lawsuit. *Sterling Radio Stations*, 328 Ill. App. 3d at 62. To have standing to sue individually, the plaintiff must allege an injury that is separate and distinct from that suffered by other shareholders or a wrong involving a contractual right of a shareholder, such as the right to vote or to assert majority control, which exists independently of any right of the corporation. *Spillyards v. Abboud*, 278 Ill. App. 3d 663, 670-71 (1996). A shareholder or unit owner who has a direct interest in a cause of action may bring a claim in an individual capacity. *Davis*, 387 Ill. App. 3d at 689. Unit owners may bring a direct claim against the condominium association alleging that the association and its board breached their fiduciary duty. *Duffy v. Orlan Brook Condominium Owners' Ass'n*, 2012 IL App (1st) 113577, ¶ 27. Individual unit owners also have standing to bring direct claims that have an individual character, such as a breach of contract claim against the developer or a breach of covenant claim against the association. See *Poulet*, 353 Ill. App. 3d at 99-100 (citing *Cigal v. Leader Development Corp.*, 408 Mass. 212, 215-218 (1990)); see also *Willmschen v. Trinity Lakes Improvement Ass'n*, 362 Ill. App. 3d 546, 552-53 (2005) (plaintiffs successfully maintained a direct claim against the association, alleging that the association breached certain covenants by failing to properly maintain two lakes that bordered 19 of 200 properties). Whether an action is derivative or direct requires a strict focus on the nature of the alleged injury, *i.e.*, "whether it is to the [association] or to the individual [unit owner] that injury has been done." *Sterling Radio Stations*, 328 Ill. App. 3d at 62.

¶ 22 Although well-pleaded facts are taken as true for the purposes of a motion to dismiss, plaintiffs must allege facts supporting all elements of their cause of action to survive dismissal.

Here, plaintiffs' complaint fails to allege injury to the Association. The factual allegations provide that: (1) upon payment of the installation fee by individual unit owners, railings were replaced by a contractor; (2) neither the contractor nor the Association had a building permit to replace the railings; (3) Lezon refused to pay the $2,800 installation fee, and his railing was not replaced; (4) Lara paid the fee, and the contractor replaced the railing in his unit; and (5) the Zoning Department issued a stop work citation for Lara's unit because the railing was replaced without a permit. While these allegations may support an individual claim for breach of contract or breach of warranty for installation of railings without a building code permit, they do not support a claim of injury to the Association generally. Not all unit owners paid for balcony railing replacements, and not all unit owners received new railings. Moreover, the parties agree that the balcony railings are limited common elements for which the unit owner is responsible for repair and replacement. Thus, plaintiffs' claims are based on individual harm to two or more unit owners or, more specifically, a direct injury with an individual character. In other words, plaintiffs' allegations establish a direct claim for relief, not a derivative one. Accordingly, the complaint fails to allege a valid derivative action.

¶ 23                               1. *Davis v. Dyson*

¶ 24        Plaintiffs maintain that they have standing to bring a derivative suit against the Association and the Board based on the holding in *Davis*. We disagree.

¶ 25        In *Davis*, a property manager embezzled $550,000 from a condominium association by forging a director's signature on more than 100 association checks. *Davis*, 387 Ill. App. 3d at 679. After members of the board of directors resigned, several unit owners sued them, alleging breach of fiduciary duty in that they failed to monitor the situation and claiming that their actions caused significant financial injury to the association. In addition to bringing individual claims, the

9

plaintiffs brought a derivative action after the board declined to sue the former directors. The trial court dismissed the complaint, concluding that the plaintiffs lacked standing to sue the former directors on either a derivative or an individual basis. *Id.* at 681.

¶ 26 On appeal, the *Davis* court held that the unit owners in a condominium association have the power to sue a third-party derivatively, including former board members, on behalf of the association itself, and reversed the dismissal of the derivative action. *Id.* at 683-84. In reaching that conclusion, the court reiterated the rule under general corporate law that "the derivative lawsuit is the standard vehicle by which shareholders may seek relief for wrongs done to a corporation ***." *Id.* at 688. The court concluded that the unit owners could use a derivative action to pursue their claim against the former directors because their complaint sought to redress wrongs allegedly done to the association and the board refused to sue. *Id.* at 688-89.

¶ 27 Here, however, one critical component of the *Davis* holding is missing. Unlike the unit owners in *Davis*, plaintiffs are not seeking redress for wrongs done to the corporate collective; plaintiffs are asserting harm done to individual unit owners. Thus, plaintiffs' complaint is not a valid derivative action.

¶ 28 *2. Condominium Property Act and Not for Profit Act*

¶ 29 Plaintiffs also argue they have authority to bring their claim derivatively because section 9.1(b) of the Condominium Property Act and section 103.10(b) the Not For Profit Act authorize condominium associations to act on behalf of unit owners on any matter affecting more than one unit. Plaintiffs misinterpret the plain language of both statutes.

¶ 30 Section 9.1 of the Condominium Property Act addresses mechanics' liens and other liens securing indebtedness that attach to condominium property. 765 ILCS 605/9.1 (West 2020). It provides that such liens shall only be imposed against individual units and, in the event a lien exists

10

against two or more units, a unit owner may satisfy the lien by paying the unit's proportional amount. *Id.* Section 9.1(a) states that "the owner of a unit shall not be liable for any claims, damages, or judgments *** as a result of any action or inaction of the board of managers of the association other than for mechanics' liens as set forth in this Section." *Id.* § 9.1(a). Section 9.1(b) provides that the board has standing to represent the unit owners against any claims involving more than one unit:

> "(b) Board of Manager's standing and capacity.
>
> The board of managers shall have standing and capacity to act in a representative capacity in relation to matters involving the common elements or more than one unit, on behalf of the unit owners, as their interests may appear." *Id.* § 9.1(b).

¶ 31    The plain language of section 9.1(b) provides that the board may act in a representative capacity on the unit owners' behalf, and nothing more. See *Town & Country Utilities, Inc. v. Illinois Pollution Control Board*, 225 Ill. 2d 103, 117 (2007) (courts must not depart from the plain language of a statute by reading into it exceptions, limitations, or conditions that conflict with express legislative intent). The statute does not empower two or more unit owners to act in a representative capacity on behalf of the association. Subsection (b) simply authorizes the Board to act as an agent for unit owners in matters involving claims or liens for indebtedness. We agree that section 9.1 of the Act does not prevent an individual unit owner from asserting an individual contract right, *i.e.*, a direct clam. See *St. Francis Courts Condominium Ass'n v. Investors Real Estate*, 104 Ill. App. 3d 663, 667 (1982) (statute does not deny individual unit owners the right to file a direct claim against developer asserting a contract right). However, it does not grant unit owners standing to file a derivative suit.

11

¶ 32    Plaintiffs' argument suggests that because the Association has authority to bring a claim on behalf of two or more unit owners under the Act, the reverse proposition must be true. However, section 9.1 does not grant reciprocal authority. Nowhere in the statutory language of sections 9.1(a) or (b) are two or more unit owners granted the authority to act on behalf of the Association.

¶ 33    Section 103.10(b) of the Not For Profit Act is equally unavailing. Section 103.10(b) states that a corporation "shall have standing to sue when one or more of its members would otherwise have standing to sue in his or her own right ***." 805 ILCS 105/103.10(b) (West 2020). This provision merely codifies the corporate law principle that a not-for-profit corporation may file suit on behalf of its shareholders. It does not alter the requirements for bringing a derivative suit against third parties on a corporation's behalf.

¶ 34                        C. Derivative Claim Against the Board

¶ 35    Essentially, plaintiffs are attempting to maintain a derivative claim against the Board on behalf of the Association. However, plaintiffs fail to explain how the board of directors of a condominium association, as distinct from the association itself, may be held collectively liable. Plaintiffs cite no authority to support their claim, and our research has revealed none. As the court in *Willmschen* noted:

> " '[The] belief that [a] board [of directors] is a separate entity capable of being sued is a misconception of what a board of directors is and how it functions within the corporate structure. A board of directors is incapable of owning property and cannot sue in its own name. Instead, a board of directors is the collection of individuals with the ultimate responsibility of making decisions on behalf of the corporation. [Citation.]' " *Willmschen*, 362 Ill. App. 3d at 551 (quoting *Flarey v. Youngstown Osteopathic Hospital*, 151 Ohio App. 3d 92, 95-96 (2002)).

12

¶ 36 Plaintiffs' derivative complaint seeks to hold the Board liable as a collective entity for wrongs alleged committed against the Association. As a practical matter, however, it is nonsensical to allow plaintiffs to step into the shoes of the Association and file a lawsuit against the Association. Particularly where, as here, plaintiffs have standing to bring a direct suit against the Association for any harm they allegedly suffered individually.

¶ 37 Because plaintiffs' complaint fails to sufficiently allege a valid derivative claim, the trial court did not err in granting defendants' motion to dismiss. Having determined that plaintiffs' complaint is not a valid derivative action, we need not consider the remaining issues raised on appeal. See *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009) (as a general rule, Illinois courts do not decide moot questions, render advisory opinions, or consider issues where the result will not be affected regardless of how those issues are decided).

¶ 38                                   III. CONCLUSION

¶ 39 The judgment of the circuit court of Du Page County is affirmed.

¶ 40 Affirmed.

13